**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 92-8274

UNITED STATES of AMERICA,

Appellee-Plaintiff,

VERSUS

JOHNNY CARL MICHELLETTI,

Appellant-Defendant.

Appeal from the United States District Court
For the Western District of Texas

(May 10, 1993)

Before REYNALDO G. GARZA, WILLIAMS and JONES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Appellant, Johnny Carl Michelletti, appeals the denial of his motion for suppression of evidence. Michelletti entered into a plea agreement expressly reserving the right to challenge his motion's denial. The appellant pled guilty to the unlawful possession of a firearm by a convicted felon. Upon careful review, we find that the denial of the motion was proper and we therefore affirm.

FACTS

On November 17, 1991, El Paso Police Officer George Perry and

his partner were on routine motor patrol in a high crime area at around 2:00 a.m. As they were driving, Perry observed a man walking in front of Alacran's Bar. When the man saw the patrol car, he turned and ran behind the bar. The officers decided to investigate and drove the car around the bar from the other direction. Officer Perry saw a group of three men standing there, including the man the police originally spotted and who was now out of breath. Perry left his car and quickly scanned the subjects' hands for weapons. At this instant a man pushed open the back exit door and had an open beer can in his left hand while keeping his right hand in his pants pocket. The officer testified that this man, Johnny Carl Michelletti, seemed to have a cocky attitude and he stared right at the policeman. He then attempted to walk past the officer. Perry stated that he stopped the subject because he was violating the law by leaving a bar with alcohol. He was suspicious that some other criminal activity might be taking place because the initial subject had run from the police and joined the group of men at such a late hour in this crime ridden part of town. The officer was particularly wary of Michelletti, who is six foot two and weighs 220 pounds and kept his right hand in his pocket when joining the suspicious trio. The appellant was told to put the beer on the patrol car and put both his hands on the vehicle. A quick frisk uncovered a .22 caliber pistol in the right hand pants pocket that had originally drawn the officer's attention. The appellant had been convicted of aggravated assault in 1989. Michelletti pled guilty to the unlawful possession of a firearm by

a convicted felon in violation of 18 U.S.C. 922(g)(1). He specifically reserved the right to appeal the denial of his motion to suppress the evidence of the pistol. He was sentenced to 33 months imprisonment, three years supervised release and a $50 assessment. Michelletti timely appealed.

### ANALYSIS

The appellant argues that Officer Perry had no basis to detain or frisk him and therefore the discovered concealed pistol should not have been admitted into evidence. We disagree. An officer may stop and search an individual if he has reasonable suspicion that criminal activity is afoot and the suspect might be armed. Terry v. Ohio, 392 U.S. 1, 29-30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "We are unwilling to tie the hands of police officers operating in potentially dangerous situations by precluding them from taking reasonable steps to ensure their safety when they have legitimately detained an individual." United States v. Rideau, 969 F.2d 1572, 1575 (5th Cir. 1992).

Officer Perry had several reasons to be suspicious of the appellant. The time was around 2:00 a.m., closing time for bars. The officers were on routine patrol in a high crime area when they observed a man turn and run away from them at Alacran's Bar. This first subject immediately went behind the bar and joined his two friends presumably to announce the policemen's arrival. Suspicions were already aroused by this evasive individual joining these other men when he was obviously apprehensive about the police presence. When the policeman approached the group, Michelletti suddenly

3

pushes open the back door of the bar and approaches. He is holding an open beer can in his left hand while keeping his right hand in his front pants' pocket. The appellant weighs 220 pounds and is six foot, two inches tall. This imposing figure could cause a lot of harm if he did have a weapon. The officer appreciated the risk involved if indeed there was some criminal intent on the part of the four men. The officer also surmised, in the alternative, that the three men and the police might be in danger if the appellant had ill intent and was actually armed. The fact that he kept his right hand in his pocket at all times, given the surrounding circumstances, was reason enough to suspect Michelletti of possibly being armed and warranted the pat down frisk for the officers' and, possibly, the bystanders' safety. The appellant had a bit of a cocky attitude, stared at the officer and then attempted to walk past him. Michelletti did not have any intention of setting the beer down or pouring it out. The officer knew that if the bar had a mixed beverage permit, as most bars do, that it was a violation to remove any alcoholic beverage from the premises under the Tex. Alco. Bev. Code Ann. § 28.10.[1] If in the alternative, the establishment had an off premises license, it would be a violation under §§ 71.01[2] or 101.72[3]. The record is silent as to which

---

[1]  § 28.10 provides in relevant part:
Consumption Restricted to Premises
.  .  .  .  .
(b)  A mixed beverage permittee may not permit any person to take any alcoholic beverage purchased on the licensed premises      from the premises where sold. . . .

[2]  § 71.01  Authorized Activities.
The holder of a  retail dealer's off-premise license

license the bar carried.  The officer also did not know whether the beer was illegally sold after 2:00 a.m., in violation of § 105.05.[4] The officer had a definite duty to uphold the Code under § 101.07.[5] It is clear that the officer had a good faith reason to believe that a violation had taken place and therefore had the authority to stop the appellant aside from the suspicions generated by the surrounding events and Michelletti's concealed hand.

Given the appellants' attitude, stare and the placement of his right hand while he cavalierly carried a beer out of a bar in violation of Texas Law were grounds for suspicion.  When you combine these reasons with the time at night, the high crime area,

---

may      sell beer in lawful containers to consumers, but not for          resale and not to be opened or consumed on or near the              premises where sold.

[3]  § 101.72 states in relevant part:
Consumption of Alcoholic Beverage on Premises Licensed for Off-Premises Consumption
(a) A person commits an offense if the person knowingly consumes liquor or beer on the premises of a holder of a wine      and beer retailer's off-premise permit or a retail dealer's       off-premise license.

[4]  § 105.05   states in relevant part:
Hours of Sale: Beer
(a) No person may sell, offer for sale, or deliver beer at       any time not permitted by this section.
.   .   .   .   .
(c) In a county having a population of 300,000 or more, according to the last preceding federal census, a holder of a retail dealer's on-premise late hours license may also sell,      offer for sale, and deliver beer between midnight and 2 a.m.       on any day.

[5]  § 101.07  Duty of Peace Officers
All peace officers in the state, including those of cities, counties, and state, shall enforce the provisions of this code and cooperate with and assist the commission in detecting violations and apprehending offenders.

the suspicious actions of the three men, the officer had sufficient reasonable suspicion that he might be in danger and that Michelletti was possibly armed. The police did not know if they were in a situation involving four hostile suspects or only one possibly armed suspect giving the officer the added responsibility of protecting the civilians. Michelletti was properly frisked because he kept his hand where a weapon could and actually was concealed. The danger these officers were facing is underscored in the testimony given that a fellow officer and friend was shot to death in El Paso only two weeks prior.

We view the evidence with all inferences in favor of the verdict. United States v. Martinez, 975 F.2d 159, 161 (5th Cir. 1992), cert. denied, (1993). Findings of fact can be challenged only for clear error. United States v. Richardson, 943 F.2d 547, 549 (5th Cir. 1991). We do not find any reversible error here.

CONCLUSION

We find that Officer Perry had reasonable suspicion to stop and frisk the appellant. The fruit of that frisk, the concealed pistol, was therefore properly admitted into evidence. For all the above reasons, we

AFFIRM.

6